IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHARI LAKE,                                  Case No.: 2:07cv695

    Plaintiff                             Judge Graham

  v.                                           Magistrate Judge Abel

THOMAS CASIMIR, et. al.,

    Defendants.

## OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56(c) filed by Defendants Officer Thomas Casimir (Officer Casimir) and the City of Columbus (City) on October 1, 2008. The plaintiff is Shari Lake (Lake).

Plaintiff has conceded that she has not adduced any evidence that Casimir's alleged misconduct was pursuant to a policy of the City, was caused by the City's failure to train Casimir, or was ratified by the City and therefore agrees that summary judgment in favor of the City is appropriate.

### I.    FACTS

Defendant Casimir is a police officer employed by the Columbus Division of Police (CDP) and has been employed by the CDP since June, 1990. Casimir has received over 1,000 hours of training in his field, including the detection and apprehension of impaired drivers. He has also attended various in-service training and has completed two four day courses on the detection of drivers impaired by alcohol or drugs, and the performance of national field sobriety

testing. Casimir has been trained in the proper use of the field sobriety tests and has extensive experience in administrating the tests.

At approximately 1:00 a.m on the morning of July 22, 2005, Casimir was doing traffic enforcement on Interstate 70 in Columbus, Ohio. Casimir was using a laser device to clock the speed of vehicles traveling eastbound on I-70 and observed a vehicle which was clocked going 75 mph in a 65 mph zone. Casimir proceeded to initiate a traffic stop of the vehicle for speeding. The vehicle was being operated by plaintiff, who was on her way home after dining with a friend, where, according to plaintiff, she consumed two alcoholic drinks. Plaintiff and her friend had spent the evening commiserating over the loss of their respective mothers and plaintiff had been crying.

After pulling over plaintiff's vehicle, Officer Casimir approached the car and requested plaintiff's license, registration and insurance. While speaking with plaintiff, Casimir noticed that plaintiff's eyes were bloodshot and that she had a strong odor of alcohol on her breath. At this point, Casimir did not suspect Lake of being intoxicated, but only of drinking and asked her to step from her car. Casimir did not announce his intention to conduct field sobriety tests at this point. Once out of the car, the plaintiff's behavior changed from cooperative to belligerent, and Casimir then asked her to perform various field sobriety tests. Plaintiff felt that something was "odd" and, worried that she was being mistreated due to her race, used her cell phone to call her voice mail at home to record her interaction with Casimir. The transcript of the recorded phone call is provided at doc. 13-3.

Officer Casimir first performed the "Horizontal Gaze Nystagmus test" (HGN) on plaintiff. Nystagmus is an involuntary jerking of the eye and the HGN test provides clues to

intoxication based on observing the movement of the eyes. (Casimir Aff. Doc. 13-2 ¶ 4). Based on the standards of the National Highway Transportation and Safety Administration (NHTSA), "observation of four of six clues on the HGN indicates that it is likely that the subject's BAC is above .10" (Id). Under Ohio law a person is operating under the influence of alcohol if she has a BAC of .08. Id (citing Ohio Rev. Code 4511.19(A)(1)(d)). Casimir observed four of the six clues on the HGN when testing plaintiff, although plaintiff alleges that she has a disability involving a "lazy eye" which should have been noticed by Casimir and which may have affected the results of the test. Due to the fact that plaintiff was exhibiting aggression and frustration with Officer Casimir, he called for backup with a vehicle equipped with a video camera.

Based on his training and his observation of plaintiff, Casimir concluded that plaintiff had failed the HGN test and therefore instructed plaintiff to perform the "Walk-and-Turn" test. The Walk-and-Turn test consists of two stages: the Instruction stage and the Walking stage. In the Instruction stage, the subject's attention is divided between maintaining balance in a heel to toe position and processing the instructions being given to her. (doc. 13-2 at ¶ 5). In the walking stage, the subject must walk heal to toe in a line and turn without raising her arms for balance, must count out loud, and must remember the number of steps taken and the instructions given to her. (Id). Pursuant to NHTSA standards, there are eight clues to be watched for, and the observance of two of those clues is indicative that the subject's BAC is over .10. (Id).

When plaintiff was asked to perform the Walk-and-Turn test she became agitated, complaining that she had already passed the vision test and was now just being harassed. (doc. 13-3 p. 4). She also informed Casimir that she was a plus-size woman with "thigh issues" and could not walk heel to toe. (Id). At this point the second police car had arrived and a video of

the incident was started. In addition, plaintiff's cell phone was still on and her home answering machine was recording the events. During the test, Casimir observed seven clues: plaintiff stumbled during instructions, started the test twice before the instructions were complete (despite being told not to start until all instructions were given), plaintiff had to ask for instructions again once she made it to the end of the line before turning, she did not walk heel-to-toe as instructed, she raised her arms for balance, lost her balance while making the turn, and took eight steps each direction but counted aloud to nine. (doc. 13-2 at ¶15). During the test, plaintiff put her cell phone in her mouth, continued to talk and yell, and admitted that she had been speeding and "was not that drunk." (doc. 13-3 at p. 6). She also proclaimed that her mother had recently died, that she wanted to get home and get her dog, and asked Casimir if he also wanted her to dance for him. (Id at p. 6-7).

     Due to plaintiff's performance on the Walk-and-Turn test, Officer Casimir then requested plaintiff to perform the "One-Leg-Stand test." Plaintiff was either unwilling or unable to take the test and refused to do so. Instead, she thrust her cell phone in Casimir's face. Based on his observation that plaintiff had bloodshot eyes, smelled of alcohol, admitted to drinking, stated she wasn't "that drunk," her erratic actions and words, her performance on the sobriety tests and her thrusting of her phone in his face, Casimir concluded that plaintiff was operating under the influence of alcohol. Plaintiff was arrested, issued a citation for speeding, taken to the Reynoldsburg Police Station (where she refused to take a breath test) and was then taken home by Casimir. Plaintiff was charged with driving under the influence and was later acquitted of this charge.

Plaintiff filed suit against Casimir and the City of Columbus on July 20, 2007 for unlawful arrest in violation of 42 U.S.C. §1983, malicious prosecution in violation of 42 U.S.C. §1983, violation of 42 U.S.C. §1981 and municipal liability. Plaintiff alleges that Officer Casimir did not have probable cause to arrest her for driving under the influence in violation of the Fourth Amendment. She also alleges that Casimir made false and misleading statements in his police report in a direct attempt to secure a prosecution of the plaintiff. Specifically, plaintiff complains that the defendant falsely accused her of using profanity during the traffic stop and that defendant failed to mark the box on the police report indicating that her speech was clear. She also alleges that her arrest and prosecution were motivated by an intent to discriminate against her based on her race.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005); Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the nonmoving party must present

"significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994)

### III. LEGAL DISCUSSION

#### A. Plaintiff's 42 U.S.C. § 1983 claims

To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify "a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Adams v. Metiva, 31 F.3d 375, 386 (6th Cir. 1994). Plaintiff alleges that Office Casimir violated her Fourth Amendment rights when he allegedly arrested her without probable cause. She also claims violation of 42 U.S.C. §1983 in defendant's malicious prosecution of her.

1. **Whether Officer Casimir Had Probable Cause To Arrest Plaintiff.**

Arrest without probable cause violates the Fourth Amendment. Thacker v. City of Columbus, 328 F.3d 244, 255 (6th Cir. 2003) (citing Crockett v. Cumberland College, 316 F.3d 571, 580 (6th Cir. 2003). Probable cause is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). In determining whether there was probable cause to arrest, the court must determine whether at the time of arrest, the "facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citing Brinegar v. United States, 338 U.S. 160, 175-176 (1949); Henry v. United States, 361 U.S. 98, 102 (1959)). This determination requires an examination of the "totality" of the facts and circumstances surrounding the arrest. State v. Miller, 117 Ohio App.3d 750, 757 (1997) (citing State v. Bobo, 37 Ohio St. 3d 177, 524 N.E.2d 489 (1988)).

Plaintiff asserts that Officer Casimir did not have probable cause to arrest her because Casimir did not have a reasonable suspicion that she was intoxicated when he ordered her to perform the field sobriety tests. Therefore, according to plaintiff, any evidence obtained from the testing is fruit of the poisonous tree and cannot form the basis of Officer Casimir's probable cause to arrest plaintiff. The basis of the plaintiff's argument is Officer Casimir's deposition testimony in which he states that he did not suspect intoxication, but only drinking, at the time he asked plaintiff to step out of the vehicle. (doc 21-2 p. 22). According to plaintiff, because the officer did not have a suspicion that she was intoxicated when he asked her to alight from her automobile, he did not have reasonable suspicion to ask her to perform the field sobriety tests. Thus, according to plaintiff, the officer also did not have probable cause to arrest her for driving under the influence.

The plaintiff correctly states that an officer must have a reasonable suspicion of intoxication in order to request that the driver perform field sobriety tests. State v. Coates, No. 01CA21, 2002 Ohio 2160 (Ct. App. Ohio Feb. 25, 2002) (before an officer may order an individual to perform field-sobriety tests, "he or she must have a reasonable, articulable suspicion that the individual was operating a motor vehicle while under the influence of alcohol"); State v. Hill, No. 07-CO-12, 2008 Ohio 3249 (Ct. App. Ohio, June 25 2008)( In order to administer field sobriety tests, "an officer must have reasonable suspicion, based on specific and articulable facts, to believe a person is under the influence of alcohol"). In determining whether there was reasonable suspicion to administer the tests, the "court is to examine the totality of the circumstances and determine whether reasonable grounds existed, including the person's actions before, during, and after driving the vehicle." Hill, 2008 Ohio 3249, at *6;

8

State v. McCaig, 51 Ohio App. 3d 94, 96 (Ct. App. Ohio 1988) ("under the totality-of-the-circumstances test, the evidence will not be based solely on actions of the defendant prior to and during the period of time he was driving the vehicle, but will also include his actions immediately after getting out of his vehicle.").

A police officer may, during the course of a traffic stop for traffic violation, ask the driver to step out of his vehicle. PA v. Mimms, 434 U.S. 106, 111 n.6 (1977); State v. Darrington, 54 Ohio St. 2d 321, 376 N.E. 2d 954 (1978) (citing Mimms in concluding that an officer could ask a suspect to step from his vehicle during a lawful traffic stop); State v. Stewart, No. 87237, 2006 Ohio 5934 (Ct. App. Ohio Nov. 9, 2006) ("the historical case law established by the United States Supreme Court and adopted in this jurisdiction determines that a driver as well as a passenger may be ordered from the vehicle while the officer issues a traffic summons."); State v. Wells, No. 20798, 2005 Ohio 5008 (Ct. App. Ohio Sept. 23, 2005)(once the vehicle was lawfully stopped for traffic violation, the officer did not need reasonable suspicion of criminal activity before ordering the driver out of the car). Plaintiff does not deny that she was lawfully stopped for speeding. According to the law of this jurisdiction, once Casimir stopped plaintiff for speeding, he had the right to ask her to step out of the car. At the point where he asked her to step from her vehicle, according to the undisputed testimony, plaintiff became agitated and boisterous where she had previously been calm. Moreover, she did not immediately move to the front of her vehicle as asked. It was only after Officer Casimir was able to move her to the front of her vehicle that he announced aloud his intention to conduct field sobriety tests.

By the time Officer Casimir requested that plaintiff perform field sobriety tests, he had observed plaintiff operating a motor vehicle at approximately 1:00 a.m at a speed of 75 mph in a 65 mph zone. He had smelled a strong odor of alcohol coming from her and noticed that her eyes were bloodshot. When lawfully asked to alight from her car, her behavior became more aggressive and she was defiant in responding to the officer's directions. Plaintiff does not deny that she informed Officer Casimir that she had a couple of alcoholic drinks that evening. Based on the totality of these undisputed circumstances Officer Casimir had reasonable suspicion to ask plaintiff to perform field sobriety tests. State v. Criswell, 162 Ohio App. 3d 391, 393 (Ct. App. Ohio 2005) (odor of alcohol, speeding, bloodshot and glassy eyes and an admission of drinking a couple of beers was sufficient to justify the administration of field sobriety tests); State v. Mapes, Lake App. No. F-04-031, 2005 Ohio 3359 (Ct. App. Ohio June 30, 2005) (reasonable suspicion to detain driver where officer noticed the odor of alcohol, slurred speech, glassy and bloodshot eyes, and the driver was stopped at two in the morning, "a time when a dangerous number of drunk drivers are on the road"); Hill, 2008 Ohio 3249 (reasonable suspicion to conduct field sobriety tests existed where the officer smelled an odor of alcohol, the defendant's eyes were bloodshot and glassy, defendant was stopped a 1:54 a.m. and was speeding); State v. Howard, No. 2007CA42, 2008 Ohio 2241 (Ct. App. Ohio May 9, 2008) (speeding in conjunction with a strong odor of alcohol, bloodshot eyes, and the admission of drinking one alcoholic drink was sufficient justification to conduct a field sobriety test.)

Having found that Officer Casimir possessed reasonable suspicion to conduct the field sobriety tests, the court must now determine whether he also possessed probable cause to arrest plaintiff. In determining whether there was probable cause to arrest for driving under the

influence, the court must consider whether "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Acton, No. 14-01-19, 2001 Ohio App. LEXIS 4644 (Ct. App. Ohio Oct. 16, 2001) (citing State v. Homan, 89 Ohio St. 3d 421, 427, 732 N.E.2d 952, 957 (1988) (superceded on other grounds) (internal citations omitted)). After observing sufficient facts to give him reasonable suspicion to conduct field sobriety tests, Officer Casimir conducted the HGN test and the Walk-and-Turn test on plaintiff. Plaintiff does not dispute that she was asked to take these tests nor that she did in fact take the tests. She also does not dispute the results of those tests. According to the undisputed testimony, plaintiff demonstrated six of six clues on the HGN test. Officer Casimir, who has extensive training and experience in conducting these tests, avers that observation of four of six clues indicates that it is likely that a subject's BAC is above .10. (doc. 13-2 at ¶12). Officer Casimir also observed seven of eight clues on the Walk-and-Turn test, including loss of balance, inability to follow instructions, inability to recall instructions, failure to walk heel to toe, failure to walk without raising her arms, improper turn, and miscounting of her steps. (Id at ¶15). Plaintiff does not dispute the officer's testimony as to her performance on the test[1]. The

---

[1] Plaintiff does assert that she has a "lazy eye" which should have been noticed by Officer Casimir during the HGN test and that she is overweight which she believes affected her ability to walk in a straight line. There is simply no evidence that a "lazy eye" affects the outcome of an HGN test, nor that the failure of Officer Casimir to notice said defect means that he was somehow not paying adequate attention during the test. Indeed, the "lazy eye" is so unnoticeable that plaintiff herself could not remember which eye is affected. (doc. 21-2 p. 3). Moreover, there is no evidence as to how plaintiff's weight affected her ability to walk in a straight line. Even if the court were to assume that a self-described "plus size" woman cannot walk heel to toe in a line, such factor would not explain her failures on other parts of the test. Specifically, there is no allegation or evidence that being "plus-sized" affected her balance, her ability to walk without raising her arms at her sides, her ability to remember instructions, or to

11

undisputed evidence also establishes that the exhibition of two or more clues on the Walk-and-Turn test indicate that a subject's BAC is likely over .10. (Id).

During the course of the field sobriety tests, plaintiff's behavior remained erratic. She admits to being angry and arguing that she was being harassed by the officer, and in the next breath stating, "I love you guys." (doc. 13-3 p. 6). She admitted to speeding. (Id, "I said I was going 75. Write me a ticket and let's go"; "I am sorry I was speeding"). While defendant is trying to explain the Walk-and-Turn test, plaintiff states, "What? What? You want me to dance?" (Id.). She then stated to the officer, "I am not that drunk." (Id). Finally, she thrust her cell phone into the officer's face while he was trying to administer the tests. (Id). Plaintiff does not dispute any of these facts.

The court finds that based on the totality of the undisputed circumstances, speeding at 1:00a.m., the smell of alcohol, admission of drinking alcohol, bloodshot eyes, erratic and aggressive behavior, and poor performance on two field sobriety tests, the officer had probable cause to arrest plaintiff. State v. Williams, 83 Ohio App. 3d 536, 539, 615 N.E.2d 317, 319 (Ct. App. Ohio 1992) (when officer, after a lawful stop, observes that the driver "has glassy, bloodshot eyes, the odor of an alcoholic beverage on his breath, and is able to perform physical coordination tests only poorly, probable cause exists both for the detention for inquiry and the subsequent arrest of that driver for driving under the influence of alcohol"); State v. Burger, 33 Ohio App. 3d 231, 232-233, 515 N.E.2d 640, 641-642 (Ct. App. Ohio 1986) (probable cause to arrest for driving under the influence existed where driver was stopped for speeding, smelled of alcohol, had bloodshot eyes, was confused, admitted to drinking alcohol, and could not

---

count correctly.

successfully perform the field sobriety coordination tests). Accordingly, defendant is entitled to summary judgment on plaintiff's 42 U.S.C. §1983 claim for false arrest. See Gates v. City of Cleveland, No. C85-798, 1986 U.S. Dist. LEXIS 20657 (Ct. App. Ohio Sept. 9, 1986) (summary judgment on a 42 U.S.C. § 1983 claim grounded upon illegal arrest can be entered for the defendants if they can demonstrate that there was probable cause for the arrest of the plaintiff).

### 2. Plaintiff's Claim for Malicious Prosecution

"In order to prevail on a 42 U.S.C.§1983 claim of malicious prosecution, a plaintiff has to prove three elements: (1) that defendants acted under color of state law; (2) that defendants deprived plaintiff of his Fourth Amendment right to be free from malicious prosecution, unlawful arrest, or the use of excessive force; and (3) that as a proximate result, plaintiff suffered injury or damages." Mechler v. Hodges, No. C-1-02-948, 2006 U.S. Dist. LEXIS 76550 (Oct. 11, 2006). The Sixth Circuit recognizes a section 1983 claim for malicious prosecution based on a violation of Fourth Amendment rights, but has not set forth the precise elements of such a claim. Id. at p. 6, n.3 (citing Darrah v. City of Oak Park, 255 F.3d 301, 312 (6th Cir. 2001)). It is clear, however, that at a minimum the Sixth Circuit requires that the plaintiff show that defendant lacked probable cause to arrest the plaintiff. Mechler, 2006 U.S. Dist. LEXIS 76550 (citing Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003)) ; Johnson v. Ward, 43 Fed. Appx. 779, 782-783 (6th Cir. 2002) (a plaintiff cannot make out a malicious prosecution claim under the Fourth Amendment if there is a finding of probable cause to prosecute). The plaintiff has the burden of making a clear showing that there was no probable cause to prosecute. Worley v. Columbia Gas of Kentucky, Inc., 491 F.2d 256, 262 (6th Cir. 1973).

The court has already concluded that the defendant possessed probable cause to arrest the plaintiff for driving under the influence. In addition, at plaintiff's criminal trial, the presiding judge twice denied her Ohio Crim. R. 29 motions for acquittal. Although not conclusive on the issue, the denial of a rule 29 motion for acquital is evidence that there was probable cause for arrest. Briner v. City of Ontario, No. 1:07CV129, 2007 U.S. Dist. LEXIS 75795 (N.D. Ohio Sept. 28, 2007). Because there is some evidence of probable cause to prosecute, in order to withstand summary judgment, the "plaintiff must come forward with some proof of malice or bad faith" by defendant in pursuing criminal charges against plaintiff. Id. She has failed to do so.

The plaintiff argues however, that the defendant is liable to her for malicious prosecution because he allegedly prepared a false and misleading police report which led to her prosecution. Specifically, plaintiff alleges that Officer Casimir falsely accused her of using profanity during the investigatory stop. She also alleges that Casimir failed to include exculpatory evidence on the police report when he failed to mark the box indicating that her speech was clear. Plaintiff has raised an issue of fact with regard to whether or not plaintiff used profanity during her arrest. However, this is not a material issue of fact. Officer Casimir had probable cause to arrest plaintiff regardless of whether or not she used profanity.

Plaintiff also asserts that the officer misled the state court by failing to mark that her speech was clear on the police report.[2] At his deposition, Casimir was asked about the police report and specifically about the area of the report designated for observations on the suspect's "speech." In the speech section of the report, there were boxes labeled "slow, slurred, accented,

---

[2] The police report was not submitted to the court by either of the parties.

rapid, mumbled, clear, thick-tongued, incomprehensible, and stuttered." (doc. 21-2 p. 27). Officer Casimir did not mark off any of these boxes, although he admits that plaintiff's speech was in fact clear. (Id). It is this failure that gives rise to plaintiff's allegation that the officer withheld exculpatory information. Plaintiff fails to address, however, the fact that the officer also failed to mark all the other boxes under speech. Plaintiff wants the court to conclude that the failure to mark "clear" necessarily implied that her speech was not clear, but given that the defendant failed to mark all the other boxes, one could just as easily infer that the officer simply overlooked this part of the report.

Given the overwhelming evidence in favor of finding probable cause to arrest, a reasonable jury could not conclude that there was a lack of probable cause to prosecute. Accordingly, defendant's motion for summary judgment on this claim is granted.

### 3. Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To defeat a claim of qualified immunity, a plaintiff must show: 1) the facts viewed in the light most favorable to the plaintiff show that a violation of the plaintiff's constitutional rights occurred and, 2) the constitutional right was clearly established. Saucier v. Katz, 533 U.S. 194, 200 (2001). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992) (citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)).

The court has already concluded that there was no violation of plaintiff's constitutional rights because the defendant had probable cause to arrest her and there was probable cause to prosecute her. Thus, the court need not consider whether defendant is entitled to qualified immunity. See Becker v. Bd. of Trs. Clearcreek Twp., No. 3:05cv00360, 2008 U.S. Dist. LEXIS 75658 (S.D. Ohio Sept. 30, 2008) (because there was no constitutional deprivation, the court need not consider whether the defendant officers were entitled to qualified immunity); Brandenburg v. Murphy, No. 90-6269, 1991 U.S. App. LEXIS 13680 (6th Cir. June 21, 1991) (in a suit under 42 U.S.C.S. § 1983 for false arrest, the arresting officer is entitled to qualified immunity if he reasonably believed he had probable cause to make the arrest); Martin v. City of N. College Hill, No. 1:07-CV-00367, 2008 U.S. Dist. LEXIS 96873 (S.D. Ohio Aug. 27, 2008) (because summary judgment was granted in favor of Defendants on both the probable cause and malicious prosecution claims, it was unnecessary to reach the qualified immunity claim).

### B. Plaintiff's Claim Under 42 U.S.C. §1981

Plaintiff also claims that the defendant's actions violated 42 U.S.C. §1981, which provides, in pertinent part, that all persons "shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. §1981(a). Although on its face, 42 U.S.C. § 1981 relates primarily to racial discrimination in the making of contracts, "courts have looked to the final two clauses of § 1981 -- the "equal benefit" and "like punishment" clauses -- and concluded that various types of racially motivated police misconduct is actionable under § 1981." Bouquett v. Clemmer, 626 F. Supp. 46, 50 (S.D. Ohio 1985). In

order to establish a section 1981 claim, the plaintiff must show (1) that she is a member of a racial minority, (2) that the defendant acted with an intent to discriminate against her on the basis of his race and (3) that the defendant's race discrimination concerned one or more of the protected activities enumerated in section 1981(a). Mayers v. Sedgwick Claims Mgmt. Servs., 101 Fed. Appx. 591, 592 (6th Cir. 2004).

There is no dispute that plaintiff is a member of a racial minority. Nor is there any argument that section 1981 is the proper mechanism by which to bring her claim for race discrimination in the traffic stop and subsequent arrest. The dispute lies in whether defendant acted with an intent to discriminate against her on the basis of race.

Defendant contends that the plaintiff has failed to provide any evidence that would satisfy the intentional discrimination element of a section 1981 claim. The court agrees. The plaintiff's factual evidence on the issue of Officer Casimir's intent to discriminate against her is very limited. First, she alleges that Officer Casimir treated her differently because he asked her to perform field sobriety tests when he did not believe she was intoxicated and this is something he normally does not do. Second, she alleges that Officer Casimir falsely accused her or making race an issue during the arrest and that this accusation against her is evidence that Officer Casimir was "fixated on Ms. Lake's race" at the time of the arrest. (doc 21). Neither of these factual allegations raise an inference of an intention to discriminate on the part of the defendant.

Plaintiff focuses on the defendant's testimony in which he states that he did not suspect plaintiff of "intoxication," but only of drinking, at the time he asked her to step from the vehicle and that he normally does not ask people who he does not suspect of intoxication to perform field sobriety tests. (doc 21-2 p. 22). This testimony does not establish that plaintiff was treated

17

differently than others in her situation. The defendant suspected her of drinking, but not intoxication, when he lawfully asked her out of the vehicle. He did not ask her to perform field sobriety tests at the point where he did not suspect "intoxication," just as he does not ask other individuals who he does not suspect of intoxication to perform field sobriety tests. However, once she was lawfully asked to step out of the vehicle, Casimir observed additional signs of possible intoxication which led him to ask plaintiff to perform the field sobriety tests. Presumably, although not asked by plaintiff's counsel, defendant conducts field sobriety tests on individuals who, like plaintiff, he <u>does</u> suspect of intoxication. A reasonable jury could not conclude that defendant's request that plaintiff, who had been speeding at 1:00 a.m., smelled of alcohol, had blood shot eyes, admitted to drinking that evening, and showed erratic behavior, perform field sobriety tests was the result of intentional racial discrimination.

Plaintiff's second factual allegation which she proffers as evidence of the defendant's intent to discriminate against her stems from defendant's testimony that plaintiff accused him of harassing her based on her race during the traffic stop and arrest. At his deposition, defendant testified that during the field sobriety tests, plaintiff indicated that she felt that she was being harassed because she was a black female. (doc. 21-2 p. 23). Plaintiff denies that she "played that race card" with defendant and that defendant lied during her criminal trial when he said she did. (doc. 21-2 p. 17). She asserts that the fact that the defendant "lied" about the issue of race provides evidence that her race did in fact play a part in her arrest. Although there is an issue of fact with regards to whether or not plaintiff accused defendant of harassing her based on race, it is not a material issue of fact that would preclude summary judgment. The fact that the defendant testified that plaintiff accused him of harassing her based on race, does not raise an

inference that he arrested the plaintiff because of her race. Officer Casimir did not know plaintiff's race when he initiated the stop (doc. 21-2 p. 21), and avers that race was not a motivating factor in his stop and subsequent arrest of the plaintiff. (doc 13-2 at ¶20). Plaintiff admits that defendant did not use any inappropriate language or racial terms when speaking with her. (doc. 21-2 p. 12). Finally, the undisputed evidence of probable cause to arrest was more than adequate.

Plaintiff has failed to produce evidence from which a reasonable jury could conclude that the traffic stop, arrest, and prosecution were motivated by an intent to discriminate against her on account of her race. Accordingly, she cannot meet the second required element of a 42 U.S.C. § 1981 claim, and defendant is granted summary judgment on that claim.

### C. Municipal Liability

The plaintiff concedes that she cannot maintain a claim against the City of Columbus. Accordingly, summary judgment on this claim is granted.

### IV. CONCLUSION

Based on the foregoing, the defendants' motion for summary judgment (doc. 13) is GRANTED. The clerk shall enter final judgment in favor of the defendants dismissing plaintiff's complaint with prejudice at Plaintiff's cost.

It is so ORDERED.

        s/ James L. Graham
        JAMES L. GRAHAM
        United States District Judge

DATE: April 7, 2009